## J. P. NORFLEET v. WM. F. SIGMAN.

1. INSTRUCTIONS TO JURY WHEN EVIDENCE CONFLICTING.—In cases where the testimony is conflicting and approximates an equipoise, the court should instruct the jury with the utmost caution, clearness, and precision, avoiding as far as possible any allusion to matters not pertinent to the issue.

2. SAME.—Where the testimony presents doubts as to the material facts involved in the issue, and the court gives an erroneous instruction upon a point pertinent to the issue, it will be presumed to have had its effect upon the jury, and the judgment will be reversed.

3. SAME.—In cases where the testimony is conflicting, and the court gives an instruction wholly irrelevant, and calculated to mislead the jury, although correct as an abstract question of law, the jury will be presumed to have been misled thereby, and the judgment will be reversed.

ERROR to the Circuit Court of Marshall county. Hon. Alexander M. Clayton, judge.

*Watson & Falconer*, for plaintiffs in error, cited Wright v. Robinson, 34 Miss. 116.

*Featherston, Harris & Watson*, for defendant in error, cited Simpson v. Bowden, 23 Miss. 524; Dunlap v. Edwards, 29 ib. 41.

JEFFORDS, J., delivered the opinion of the court.

This was an action brought by Sigman to recover of Norfleet the amount due on the following account:

JESSE NORFLEET to WM. F. SIGMAN:

| | | |
|---|---:|---:|
| To four bales of cotton weighing two thousand pounds, at 35c. | $700 | 00 |
| " Extra price as per agreement, $2.50 per bale | 10 | 00 |
| | $710 | 00 |

Dec. 17, 1862.

The plea was *non assumpsit*.

The, evidence is fully set forth in the bill of exceptions; and from an inspection of the record it appears that the plaintiff and defendant both testified in the case, flatly contradicting each other as to the material facts in controversy. It will be perceived at a glance, from an examination of the record, that the sole question involved was, whether Norfleet bought the cotton on his own account, or as agent of Kuhns, Ayres & Co.

Sigman testifies positively that he sold to Norfleet alone, and did not know any other person in the transaction.

Norfleet swears quite as positively that he did not buy for himself, but as the agent of Kuhns, Ayres & Co., and that he explained and made known his agency to Sigman at the time of the purchase.

There is but little if any testimony bearing on this point outside of that given by the plaintiff and defendant, and the question really resolved itself into one of credibility between the parties, of which the jury were the exclusive judges, under the rules of law given them by the court..

In that class of cases where the testimony approximates an equipoise, and where it is conflicting in its character, we think all courts should expound the rules of law applicable to them with the utmost caution, clearness, and precision, avoiding as far as possible any and all allusions whatever to matters not involved in the issue.

Any departure from the strict letter of the law, or any failure to hold the scales of justice evenly balanced between the parties, either through design, mistake, or misapprehension of the rules of law; or giving instructions which are irrelevant or inapplicable to the questions in issue, where such instructions have a tendency to and may mislead the jury, will be fatal to any verdict which may be rendered.

In *Wright* v. *Clark Robinson*, 34 Miss. 117, the rule is laid down, " that a charge, however correct as a proposition of law, should not be given unless it is pertinent to the matters in issue and justified by the evidence. And that it will be error so to charge, unless it was manifest the jury could not have been misled by it."

The fourth charge, as asked for by the plaintiff below, is as follows :

" A principal is liable for the acts of his agent, when such agent acts within the scope of his authority ; and although the jury may render a verdict from the testimony against Norfleet, not as an agent, but as principal, then, and in that event, Norfleet has his remedy against his principals for such damages as he may sustain."

The question, and the only question, for the jury to determine in this case, was, whether Norfleet was liable to Sigman for the cotton alleged to have been sold ; and the question of the liability or non-liability of Kuhns, Ayres & Co. over again to Norfleet could not legally, in the slightest possible degree, affect the right of Sigman to recover of Norfleet in the action then pending.

The jury certainly had no right, when sworn to try the issue joined between Sigman and Norfleet, to go beyond this and ascertain the rights and liabilities which exist between Norfleet and Kuhns, Ayres & Co.

This instruction might have misled the jury, and from its nature the strong probability is that it would exercise an undue and controlling influence on the minds of the jury in forming their verdict.

By this charge, they were in effect informed that in considering the question as to what were the existing rights of the parties litigant before them, they might go still further, and ascertain what would be the respective rights of other persons who were not parties to the suit.

The jury certainly did not possess this right, and yet such is undoubtedly the effect of this instruction, if it had any meaning whatever.

If it had no meaning, then it was wholly irrelevant, and for this all-sufficient reason should have been refused by the court.

It seems to us, that if the court felt called upon to make any allusion to this matter, it should have instructed the jury that they were only to consider and determine the rights of the parties then in court, without any regard whatever as to what rights

might accrue to either of those parties as the result of that litigation.

In the case of *Harper et al.* v. *Tapley and Wife*, 35 Miss. 512, the court says : " The case manifestly depends on questions of controverted fact. . . . . . .

" We cannot know how the jury regarded these questions, and what would have been their verdict upon them. Hence when erroneous instructions are given in such a case, it is fair to infer they had their effect upon their minds, and were conducive to the verdict which they found.

" And it is undoubtedly a correct rule that if, in a case where the testimony presents doubts as to the material facts involved in the issue, the court instructs an erroneous rule of law upon a point pertinent to the issue, the instruction must be presumed to have had its effect, and the judgment will be reversed."

We think it would be exceedingly difficult to perceive why the principles and reasonings applicable to erroneous instructions do not hold with equal force and vigor to instructions which are wholly *irrelevant*, if calculated to mislead the jury, although they may be correct as mere abstract questions of law.

We apprehend where a different rule has prevailed, such as contended for by the defendant in error, it will be found, upon an analysis of the decisions, they are cases either where the facts have not been controverted, or if contested, the preponderance of evidence was clear, and such as to satisfy the court that a new trial would not probably change the result.

The most cursory examination will satisfy any person that such is the character of the cases cited and relied upon by the defendant in error. *Simpson* v. *Bowden*, 23 Miss., p. 524 ; *Dunlap* v. *Edwards*, 29 Miss., p. 41.

As this case must be reversed for the reasons already given, we do not pass upon any other of the alleged errors.

Judgment reversed, and cause remanded for new trial.